**FILED**
CLERK, U.S. DISTRICT COURT

06/15/2022

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ DVE _____ DEPUTY

1 TRACY L. WILKISON
United States Attorney
2 SCOTT M. GARRINGER
Assistant United States Attorney
3 Chief, Criminal Division
JAKE D. NARE (Cal. Bar No. 272716)
4 Assistant United States Attorney
Santa Ana Branch Office
5     United States Courthouse
    411 West Fourth Street, Suite 8000
6     Santa Ana, California 92701
    Telephone: (714) 338-3549
7     Facsimile: (714) 338-3561
    E-mail:   jake.nare@usdoj.gov
8
Attorneys for Plaintiff
9 UNITED STATES OF AMERICA

10                UNITED STATES DISTRICT COURT

11           FOR THE CENTRAL DISTRICT OF CALIFORNIA

12 UNITED STATES OF AMERICA,     CR No. 8:22-cr-00083-FMO

13         Plaintiff,     PLEA AGREEMENT FOR DEFENDANT
                     EVAN BALTIERRA
14           v.

15 EVAN BALTIERRA,
  aka "Evanb49,"
16   aka "Pixie_dust_4,"
  aka "Narli,"
17   aka "rionheart,"

18         Defendant.

19

20     1.    This constitutes the plea agreement between Evan Baltierra

21 ("defendant") and the United States Attorney's Office for the Central

22 District of California (the "USAO") in the above-captioned case.

23 This agreement is limited to the USAO and cannot bind any other

24 federal, state, local, or foreign prosecuting, enforcement,

25 administrative, or regulatory authorities.

26                 DEFENDANT'S OBLIGATIONS

27     2.    Defendant agrees to:

28

1         a.    Give up the right to indictment by a grand jury and,

2    at the earliest opportunity requested by the USAO and provided by the

3    Court, appear and plead guilty to a single count information in the

4    form attached to this agreement as Exhibit A, or a substantially

5    similar form, which charges defendant with Stalking, in violation of

6    18 U.S.C. §§ 2261A(2)(A), (B), 2261(b)(5).

7         b.    Not contest facts agreed to in this agreement.

8         c.    Abide by all agreements regarding sentencing contained

9    in this agreement.

10        d.    Appear for all court appearances, surrender as ordered

11   for service of sentence, obey all conditions of any bond, and obey

12   any other ongoing court order in this matter.

13        e.    Not commit any crime; however, offenses that would be

14   excluded for sentencing purposes under United States Sentencing

15   Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not

16   within the scope of this agreement.

17        f.    Be truthful at all times with the United States

18   Probation and Pretrial Services Office and the Court.

19        g.    Pay the applicable special assessment at or before the

20   time of sentencing unless defendant has demonstrated a lack of

21   ability to pay such assessments.

22        h.    Agree to and not oppose the imposition of the

23   following conditions of probation or supervised release:

24        i.    Defendant shall possess and use only those

25   Digital Devices and Internet Accounts that have been disclosed to,

26   and approved by, the United States Probation and Pretrial Services

27   Office upon commencement of supervision.  Any changes or additions to

28   Digital Devices or Internet Accounts are to be disclosed to, and

1  approved by, the Probation Officer prior to the first use of same.

2  Disclosure shall include both user names and passwords for all

3  Digital Devices and Internet Accounts.  Digital Devices include, but

4  are not limited to, personal computers, tablet computers such as

5  iPads, mobile/cellular telephones, personal data assistants, digital

6  storage media, devices or media which provide access to electronic

7  games, devices that can access or can be modified to access the

8  Internet, as well as any of their peripheral equipment.  Internet

9  Accounts include, but are not limited to, email accounts, social

10  media accounts, electronic bulletin boards, or other account on the

11  Internet;

12          ii.  After the Probation Officer has given defendant

13  approval to use a particular Digital Device or Internet Account,

14  defendant need not notify the Probation Officer about subsequent use

15  of that particular Digital Device or Internet Account.  Defendant

16  shall, however, notify his Probation Officer of any additions to,

17  removals from, or other modifications of the hardware or software on

18  any Digital Device or Internet Account that defendant causes to

19  occur, within one week of that addition, removal or modification.

20  The defendant shall not hide or encrypt files or data without

21  specific prior approval from the Probation Officer;

22          iii. Defendant shall provide the Probation Officer

23  with all billing records for any service or good relating to any

24  Digital Device or Internet Account, including those for cellular

25  telephone, cable, Internet and satellite services, as requested by

26  the Probation Officer, so that the Probation Officer can verify

27  compliance with these requirements;

28          iv.  Defendant consents to search at any time of the

3

day or night, with or without a search warrant, warrant of arrest,
probable cause, or reasonable suspicion by any probation officer or
law enforcement officer -- and waives any right to object to any
search and seizure -- of any Digital Device or Internet Account used
by defendant;

       v.    Defendant shall comply with the rules and
regulations of the Computer Monitoring Program.  Defendant shall pay
the cost of the Computer Monitoring Program, in an amount not exceed
$32 per month per device connected to the internet;

       vi.  Defendant shall not possess, or attempt to
possess, any materials, whether in hard copy, digital, electronic, or
any other form, that depict sexually explicit and/or nude images of
Victim 1 and/or that contain personal identifying information Victim
1;

       vii. Defendant shall not knowingly contact, or attempt
to contact, the Victims, or their families, including but not limited
to their parents, siblings, other relatives, any spouse or
significant other with whom victims may share an intimate
relationship, and any children of the Victims (all whether existing
now or during the pendency of any term of supervised release, and
collectively "the Victims' Families"), directly or indirectly by any
means, including but not limited to in person, by mail, telephone,
email, text message, or other electronic means, or through a third
party; and

       viii.    Defendant shall not attempt to locate the
Victims or the Victims' Families, or attempt to obtain information
concerning the whereabouts, phone numbers, email addresses, or other
personal identifiers of the Victims or the Victims' Families.

1

## THE USAO'S OBLIGATIONS

2       3.   The USAO agrees to:

3            a.   Not contest facts agreed to in this agreement.

4            b.   Abide by all agreements regarding sentencing contained
5  in this agreement.

6            c.   At the time of sentencing, provided that defendant
7  demonstrates an acceptance of responsibility for the offense up to
8  and including the time of sentencing, recommend a two-level reduction
9  in the applicable Sentencing Guidelines offense level, pursuant to
10 U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an
11 additional one-level reduction if available under that section.

12           d.   Recommend that defendant be sentenced to a term of
13 imprisonment no higher than the low end of the applicable Sentencing
14 Guidelines range, provided that the offense level used by the Court
15 to determine that range is 19 or higher and provided that the Court
16 does not depart downward in offense level or criminal history
17 category.  For purposes of this agreement, the low end of the
18 Sentencing Guidelines range is that defined by the Sentencing Table
19 in U.S.S.G. Chapter 5, Part A.

20                        NATURE OF THE OFFENSE

21      4.   Defendant understands that for defendant to be guilty of
22 the crime charged, that is, Stalking, in violation of Title 18,
23 United States Code, Sections 2261A(2)(A), (B), 2261(b)(5), the
24 following must be true: (1) defendant, with the intent to harass or
25 intimidate another person; (2) used the mail, any interactive
26 computer service or electronic communication service or electronic
27 communication system of interstate commerce, or any other facility of
28 interstate or foreign commerce; (3) to engage in a course of conduct

1    that (a) placed that person in reasonable fear of death and serious

2    bodily injury to that person or an immediate family member of that

3    person, or (b) caused, attempted to cause, or would reasonably be

4    expected to cause, substantial emotional distress to that person, or

5    an immediate family member of that person.

6                              PENALTIES AND RESTITUTION

7         5.   Defendant understands that the statutory maximum sentence

8    that the Court can impose for a violation of Title 18, United States

9    Code, Sections 2261A(2)(A), (B), 2261(b)(5) is: 5 years'

10   imprisonment; a 3-year period of supervised release; a fine of

11   $250,000; and a mandatory special assessment of $100.

12        6.   Defendant understands that defendant will be required to

13   pay full restitution to the victim(s) of the offense to which

14   defendant is pleading guilty.  Defendant agrees that, in return for

15   the USAO's compliance with its obligations under this agreement, the

16   Court may order restitution to persons other than the victim(s) of

17   the offense to which defendant is pleading guilty and in amounts

18   greater than those alleged in the count to which defendant is

19   pleading guilty.  In particular, defendant agrees that the Court may

20   order restitution to any victim of any of the following for any

21   losses suffered by that victim as a result: (a) any relevant conduct,

22   as defined in U.S.S.G. § 1B1.3, in connection with the offense to

23   which defendant is pleading guilty; and (b) charges not prosecuted

24   pursuant to this agreement as well as all relevant conduct, as

25   defined in U.S.S.G. § 1B1.3, in connection with those charges.

26        7.   Defendant understands that supervised release is a period

27   of time following imprisonment during which defendant will be subject

28   to various restrictions and requirements.  Defendant understands that

if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

8.   Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that he is pleading guilty to a felony and that it is a federal crime for a convicted felon to possess a firearm or ammunition.   Defendant understands that the conviction in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license.   Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty plea.

9.   Defendant and his counsel have discussed the fact that, and defendant understands that, if defendant is not a United States citizen, the conviction in this case makes it practically inevitable and a virtual certainty that defendant will be removed or deported from the United States.   Defendant may also be denied United States citizenship and admission to the United States in the future. Defendant understands that while there may be arguments that defendant can raise in immigration proceedings to avoid or delay removal, removal is presumptively mandatory and a virtual certainty

in this case.   Defendant further understands that removal and
immigration consequences are the subject of a separate proceeding and
that no one, including his attorney or the Court, can predict to an
absolute certainty the effect of his conviction on his immigration
status.   Defendant nevertheless affirms that he wants to plead guilty
regardless of any immigration consequences that his plea may entail,
even if the consequence is automatic removal from the United States.

<u>FACTUAL BASIS</u>

10.   Defendant admits that defendant is, in fact, guilty of the
offense to which defendant is agreeing to plead guilty.   Defendant
and the USAO agree to the statement of facts provided below and agree
that this statement of facts is sufficient to support a plea of
guilty to the charge described in this agreement and to establish the
Sentencing Guidelines factors set forth in paragraph 12 below but is
not meant to be a complete recitation of all facts relevant to the
underlying criminal conduct or all facts known to either party that
relate to that conduct.

Since approximately October 2020 and continuing until
approximately March 2022, in the Central District of California, and
elsewhere, defendant used the mail and electronic communication
systems of interstate commerce, to engage in a course of conduct in
which defendant stalked, harassed, intimidated, and sent threatening
communications to Victim 1 and individuals associated with Victim 1.
Defendant stalked, harassed, intimidated, and made threats to Victim
1 knowing that such course of conduct would put Victim 1 in
reasonable fear of death or serious bodily injury and would cause,
attempt to cause, or would reasonably be expected to cause,
substantial emotional distress to Victim 1.   Defendant admits that

his course of conduct did in fact place Victim 1 in fear of death or serious bodily injury to herself and others and caused substantial emotional distress to Victim 1.

Specifically, after defendant met Victim 1, a video game streamer who received income from that activity, at a gaming convention in Anaheim, California, defendant asked to visit Victim 1 in her hometown, which made Victim 1 uncomfortable.  After Victim 1 blocked defendant on various social media accounts, starting in approximately June 2020, defendant created hundreds of social media accounts in order to send Victim 1 threatening messages.  The messages defendant sent Victim 1, included, among others:

- A December 8, 2020 message via Twitter that read, "You are so fked [Victim 1] just don't know it yet."

- A January 14, 2021 message via Twitter that read in part, "[t]imes ticking . . .  waiting for the right opportunity."

- A February 13, 2021 message via Twitter that read in part, "it's only a matter of time . . . will take some time but a plan will go into effect later."

In approximately October 2020, defendant hired an unknown third party through an instant messaging mobile application to create multiple photoshopped nude images of Victim 1 that placed Victim 1's face onto pornographic images.  Beginning in approximately November 2020 and continuing to March 2022, defendant posted the photoshopped nude images to multiple pornographic websites and internet forums, sent the images to friends and family members of Victim 1.  Defendant further posted links to the photoshopped nude images on various social media websites and told others online to search for Victim 1's name in order to see naked pictures of her.

1    In approximately January 2021, Victim 1 obtained a temporary
2 restraining order against defendant in Orange County, California.
3 The temporary restraining order prohibited defendant from, among
4 other things, contacting Victim 1 directly or indirectly.  After the
5 protective order was served on defendant, defendant began posting
6 Victim 1's personal information that was listed on the protective
7 order to social media websites and during her live video game
8 streams, including Victim 1's real name and city of residence.
9 Defendant further posted Victim 1's Twitter handle to pornography
10 sites along with the photoshopped nude images defendant had created.

11    During Victim 1's live streams of video games, defendant used
12 multiple accounts to continually post harassing messages.
13 Defendant's repeated postings, referred to as "spamming," made it
14 impossible for Victim 1 to stream herself playing video games and
15 forced her to stop streaming in approximately February 2021.

16    In approximately April 2021, in lieu of a court hearing on a
17 permanent restraining order, defendant and Victim 1 reached a
18 settlement in which defendant agreed to not contact Victim 1 or her
19 family and friends, in exchange for Victim 1 dissolving the temporary
20 restraining order.

21    Following the settlement on the restraining order, defendant
22 continued to harass and stalk Victim 1.  On June 7, 2021, defendant
23 contacted Victim 1's local police department and requested that the
24 police conduct a welfare check on Victim 1 by falsely telling police
25 that Victim 1 threatened to kill herself online.  In the call,
26 defendant attempted to obtain Victim 1's home address from the
27 dispatcher.  The call resulted in local law enforcement arriving at
28 Victim 1's residence for a welfare check.

Between January 2022 and March 2022, defendant continued sending Victim 1 threatening messages through anonymous social media accounts.  Messages defendant sent included "get the casket ready" and "I've hired someone to come get you."  On March 5, 2022, defendant sent Victim 1 and others an email that stated Victim 1 would "be directly responsible for friends, family and other close ones to get affected in a very bad way."  Defendant further stated "[y]ou know who the most dangerous people are in the world?  The ones who don't care what they lose to achieve their goal."

On or about March 12, 2022, defendant sent a letter to Victim 1's boyfriend's parents.  In the letter, defendant referenced the photoshopped nude images of Victim 1 being "all over the internet nonstop."  Defendant further stated that Victim 1 "had to quit streaming and ended up in the hospital due to stress and went to therapy" as a result of defendant's harassment.  Defendant stated that the situation was going to end very badly for Victim 1.

On or about March 15, 2022, defendant sent Victim 1 an unsolicited suspicious package that was later determined to contain a box of condoms.

SENTENCING FACTORS

11.  Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a).  Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the

Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate up to the maximum set by statute for the crime of conviction.

12. Defendant and the USAO agree to the following applicable Sentencing Guidelines factors:

| Base Offense Level: | 18 | U.S.S.G. § 2A6.2(a) |
|---|---|---|
| Violation of a Court Protection Order and a Pattern of Harassment/Stalking | +4 | U.S.S.G. § 2A6.2(b)(1)(A),(E) |

Defendant and the USAO reserve the right to argue that additional specific offense characteristics, adjustments, and departures under the Sentencing Guidelines are appropriate.

13. Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

14. Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

<u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

15. Defendant understands that by pleading guilty, defendant gives up the following rights:

> a. The right to persist in a plea of not guilty.

> b. The right to a speedy and public trial by jury.

> c. The right to be represented by counsel -- and if necessary have the Court appoint counsel -- at trial. Defendant understands, however, that, defendant retains the right to be

1   represented by counsel -- and if necessary have the Court appoint

2   counsel -- at every other stage of the proceeding.

3        d.   The right to be presumed innocent and to have the

4   burden of proof placed on the government to prove defendant guilty

5   beyond a reasonable doubt.

6        e.   The right to confront and cross-examine witnesses

7   against defendant.

8        f.   The right to testify and to present evidence in

9   opposition to the charges, including the right to compel the

10   attendance of witnesses to testify.

11        g.   The right not to be compelled to testify, and, if

12   defendant chose not to testify or present evidence, to have that

13   choice not be used against defendant.

14        h.   Any and all rights to pursue any affirmative defenses,

15   Fourth Amendment or Fifth Amendment claims, and other pretrial

16   motions that have been filed or could be filed.

17   <u>WAIVER OF APPEAL OF CONVICTION</u>

18       16.   Defendant understands that, with the exception of an appeal

19   based on a claim that defendant's guilty plea was involuntary, by

20   pleading guilty defendant is waiving and giving up any right to

21   appeal defendant's conviction on the offense to which defendant is

22   pleading guilty.  Defendant understands that this waiver includes,

23   but is not limited to, arguments that the statute to which defendant

24   is pleading guilty is unconstitutional, and any and all claims that

25   the statement of facts provided herein is insufficient to support

26   defendant's plea of guilty.

27

28

## WAIVER OF APPEAL AND COLLATERAL ATTACK

17.   Defendant agrees that, provided the Court imposes a term of imprisonment within or below the range corresponding to an offense level of 19 and the criminal history category calculated by the Court, defendant gives up the right to appeal all of the following: (a) the procedures and calculations used to determine and impose any portion of the sentence, (b) the term of imprisonment imposed by the Court; (c) the fine imposed by the Court, provided it is within the statutory maximum; (d) to the extent permitted by law, the constitutionality or legality of defendant's sentence, provided it is within the statutory maximum; (e) the term of probation or supervised release imposed by the Court, provided it is within the statutory maximum; and (f) any of the following conditions of probation or supervised release imposed by the Court: the conditions set forth in Second Amended General Order 20-04 of this Court; the drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); the alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7); and any conditions of probation or supervised release agreed to by defendant in paragraph 2 above.

18.   The USAO agrees that, provided (a) all portions of the sentence are at or below the statutory maximum specified above and (b) the Court imposes a term of imprisonment within or above the range corresponding to an offense level of 19 and the criminal history category calculated by the Court, the USAO gives up its right to appeal any portion of the sentence.

19.   Defendant also gives up any right to bring a post-conviction collateral attack on the conviction or sentence, including any order of restitution, except a post-conviction collateral attack

14

1  based on a claim of ineffective assistance of counsel, a claim of
2  newly discovered evidence, or an explicitly retroactive change in the
3  applicable Sentencing Guidelines, sentencing statutes, or statutes of
4  conviction.   Defendant understands that this waiver includes, but is
5  not limited to, arguments that the statute to which defendant is
6  pleading guilty is unconstitutional, and any and all claims that the
7  statement of facts provided herein is insufficient to support
8  defendant's plea of guilty.

9                     RESULT OF WITHDRAWAL OF GUILTY PLEA

10         20.   Defendant agrees that if, after entering a guilty plea
11  pursuant to this agreement, defendant seeks to withdraw and succeeds
12  in withdrawing defendant's guilty plea on any basis other than a
13  claim and finding that entry into this plea agreement was
14  involuntary, then (a) the USAO will be relieved of all of its
15  obligations under this agreement; and (b) should the USAO choose to
16  pursue any charge that was either dismissed or not filed as a result
17  of this agreement, then (i) any applicable statute of limitations
18  will be tolled between the date of defendant's signing of this
19  agreement and the filing commencing any such action; and
20  (ii) defendant waives and gives up all defenses based on the statute
21  of limitations, any claim of pre-indictment delay, or any speedy
22  trial claim with respect to any such action, except to the extent
23  that such defenses existed as of the date of defendant's signing this
24  agreement.

25                 RESULT OF VACATUR, REVERSAL OR SET-ASIDE

26         21.   Defendant agrees that if the count of conviction is
27  vacated, reversed, or set aside, both the USAO and defendant will be
28  released from all their obligations under this agreement.

EFFECTIVE DATE OF AGREEMENT

22.   This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney.

BREACH OF AGREEMENT

23.   Defendant agrees that if defendant, at any time after the signature of this agreement and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the USAO may declare this agreement breached.  All of defendant's obligations are material, a single breach of this agreement is sufficient for the USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing. If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then: (a) if defendant has previously entered a guilty plea pursuant to this agreement, defendant will not be able to withdraw the guilty plea, and (b) the USAO will be relieved of all its obligations under this agreement.

24.   Following the Court's finding of a knowing breach of this agreement by defendant, should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then:

a.   Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

b.   Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any

16

speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

c.   Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from the statements should be suppressed or are inadmissible.

## COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES OFFICE NOT PARTIES

25.   Defendant understands that the Court and the United States Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

26.   Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation and Pretrial Services Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it

1   chooses to impose are not error, although each party agrees to
2   maintain its view that the calculations in paragraph 12 are
3   consistent with the facts of this case.  While this paragraph permits
4   both the USAO and defendant to submit full and complete factual
5   information to the United States Probation and Pretrial Services
6   Office and the Court, even if that factual information may be viewed
7   as inconsistent with the facts agreed to in this agreement, this
8   paragraph does not affect defendant's and the USAO's obligations not
9   to contest the facts agreed to in this agreement.

10      27.  Defendant understands that even if the Court ignores any
11  sentencing recommendation, finds facts or reaches conclusions
12  different from those agreed to, and/or imposes any sentence up to the
13  maximum established by statute, defendant cannot, for that reason,
14  withdraw defendant's guilty plea, and defendant will remain bound to
15  fulfill all defendant's obligations under this agreement.  Defendant
16  understands that no one -- not the prosecutor, defendant's attorney,
17  or the Court -- can make a binding prediction or promise regarding
18  the sentence defendant will receive, except that it will be within
19  the statutory maximum.

20                      NO ADDITIONAL AGREEMENTS

21      28.  Defendant understands that, except as set forth herein,
22  there are no promises, understandings, or agreements between the USAO
23  and defendant or defendant's attorney, and that no additional
24  promise, understanding, or agreement may be entered into unless in a
25  writing signed by all parties or on the record in court.
26  ///
27  ///
28  ///

18

PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

29.   The parties agree that this agreement will be considered part of the record of defendant's guilty plea hearing as if the entire agreement had been read into the record of the proceeding.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF
CALIFORNIA

TRACY L. WILKISON
United States Attorney

_____        6/7/22
JAKE D. NARE                            _____
Assistant United States Attorney        Date

_____        6/6/22
EVAN BALTIERRA                          _____
Defendant                               Date

_____        6/6/22
KATHERINE P. CORRIGAN                   _____
Attorney for Defendant EVAN             Date
BALTIERRA

CERTIFICATION OF DEFENDANT

I have read this agreement in its entirety.  I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney.  I understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement.  No promises, inducements, or representations of any kind have been made to me other than those

1   contained in this agreement.  No one has threatened or forced me in

2   any way to enter into this agreement.  I am satisfied with the

3   representation of my attorney in this matter, and I am pleading

4   guilty because I am guilty of the charge and wish to take advantage

5   of the promises set forth in this agreement, and not for any other

6   reason.

7

8   EVAN BALTIERRA                              Date 6/6/22
    Defendant

9

10                  CERTIFICATION OF DEFENDANT'S ATTORNEY

11       I am EVAN BALTIERRA's attorney.  I have carefully and thoroughly

12   discussed every part of this agreement with my client.  Further, I

13   have fully advised my client of his rights, of possible pretrial

14   motions that might be filed, of possible defenses that might be

15   asserted either prior to or at trial, of the sentencing factors set

16   forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines

17   provisions, and of the consequences of entering into this agreement.

18   To my knowledge: no promises, inducements, or representations of any

19   kind have been made to my client other than those contained in this

20   agreement; no one has threatened or forced my client in any way to

21   enter into this agreement; my client's decision to enter into this

22   agreement is an informed and voluntary one; and the factual basis set

23   forth in this agreement is sufficient to support my client's entry of

24   a guilty plea pursuant to this agreement.

25

26   KATHERINE T. CORRIGAN                      Date 6/6/22
     Attorney for Defendant EVAN

27   BALTIERRA

28

                                    20

EXHIBIT A

1

2

3

4

5

6

7

8                     UNITED STATES DISTRICT COURT

9               FOR THE CENTRAL DISTRICT OF CALIFORNIA

10   UNITED STATES OF AMERICA,              No.

11            Plaintiff,                    I N F O R M A T I O N

12            v.                            [18 U.S.C. §§ 2261A(2)(A), (B),
                                            2261(b)(5): Stalking]
13   EVAN BALTIERRA,
        aka "Evanb49,"
14      aka "Pixie_dust_4,"
        aka "Narli,"
15      aka "rionheart,"

16            Defendant.

17

18       The United States Attorney charges:

19            [18 U.S.C. §§ 2261A(2)(A), (B), 2261(b)(5)]

20       1.   Beginning in or around October 2020 and continuing to in or

21   around March 2022, in Orange County, within the Central District of

22   California, and elsewhere, defendant EVAN BALTIERRA, also known as

23   ("aka") "Evanb49," aka "Pixie_dust_4," aka "Narli," aka "rionheart,"

24   with the intent to harass and intimidate Victim 1, used an

25   interactive computer service, an electronic communication service, an

26   electronic communication system of interstate commerce, and other

27   facilities of interstate and foreign commerce, namely, email, mail,

28   and the Internet, to engage in a course of conduct, described in

1  paragraph 2 below, that placed Victim 1 in reasonable fear of death
2  and serious bodily injury, and caused, attempted to cause, and would
3  reasonably be expected to cause substantial emotional distress to
4  Victim 1.

5      2.   Defendant BALTIERRA's course of conduct included, among
6  other things, the following:

7      a.   Beginning in or around October 2020 and continuing to
8  in or around March 2022, defendant BALTIERRA created hundreds of
9  social media accounts to conceal his true identity and to send Victim
10 1 threatening and harassing messages over the Internet.

11     b.   On December 8, 2020, defendant BALTIERRA sent Victim 1
12 a message via Twitter that read, "You are so fked [Victim 1] just
13 don't know it yet."

14     c.   On or about January 14, 2021, defendant BALTIERRA sent
15 Victim 1 a message via Twitter that read in part, "[t]imes ticking .
16 . . waiting for the right opportunity."

17     d.   On or about February 13, 2021, defendant BALTIERRA
18 sent Victim 1 a message via Twitter that read in part, "it's only a
19 matter of time . . . will take some time but a plan will go into
20 effect later."

21     e.   In or about around January 2022, defendant BALTIERRA
22 hired a third party through an instant messaging mobile application
23 to create photoshopped nude images of Victim 1 that placed Victim 1's
24 face onto pornographic images.

25     f.   Beginning in or around November 2020 and continuing to
26 in or around March 2022, defendant BALTIERRA posted photoshopped nude
27 images of Victim 1 to various Internet forums, including Reddit and
28 Twitter.

1          g.   On or about February 2, 2021, defendant BALTIERRA sent

2 Victim 1 a text message that contained a photoshopped nude image of

3 herself.

4          h.   Beginning in or around October 2020 and continuing to

5 in or around February 2021, defendant BALTIERRA used multiple

6 accounts to continually post harassing messages during Victim 1's

7 live streams of video games.  Defendant BALTIERRA's repeated

8 postings, referred to as "spamming," made it impossible for Victim 1

9 to stream herself playing video games and forced her to stop

10 streaming in approximately February 2021.

11          i.   On or about February 6, 2021, in response to Victim 1

12 seeking a restraining order against defendant BALTIERRA, defendant

13 BALTIERRA sent Victim 1 a message via Twitter that read, "if anything

14 does come this way it has to have some personal information on it to

15 show who sent it and their claim against you.  and let's think hmm

16 what can one do with this personal information :)."

17          j.   Beginning on or about May 23, 2021 and continuing

18 until in or around March 2022, defendant BALTIERRA used Victim 1's

19 personal email account to sign her up for various email lists and

20 online services, to include multiple pornographic sites.

21          k.   On or about March 23, 2021, defendant BALTIERRA used

22 Victim 1's personal email account to create an "OnlyFans" account in

23 Victim 1's name that contained photoshopped nude images of her.

24          l.   On or about June 7, 2021, defendant BALTIERRA called

25 Victim 1's local police department and, using a fake name, falsely

26 stated that Victim 1 made disturbing posts on the Internet to

27 convince Victim 1's local police department to conduct a welfare

28

1  check on Victim 1.  During the call, defendant BALTIERRA attempted to
2  obtain Victim 1's home address from the dispatcher.
3          m.  In or around May 2021, defendant BALTIERRA used Victim
4  1's personal email account and photoshopped nude images of Victim 1
5  to create a sex advertisement on Craigslist in Victim 1's hometown.
6          n.  On or about January 17, 2022, defendant BALTIERRA sent
7  Victim 1 a message via Twitter that read in part, "get the casket
8  ready" and "I've hired someone to come get you."
9          o.  On or about March 5, 2022, defendant BALTIERRA sent
10 Victim 1, and others, a message through Twitter that read: "This is
11 addressed as a general message to everyone that [Victim 1] . . . have
12 interacted with or know.  You all want to try and ignore things but a
13 day will come where [Victim 1] wishes she would have done something.
14 She will be directly responsible for friends, family and other close
15 ones to get affected in a very bad way.  They wanted to involve
16 friends and family?  Well others can play that game as well.  You all
17 want to make a joke out of things and act like the situation won't
18 end badly for [Victim 1].  You know who the most dangerous people are
19 in the world?  The ones who don't care what they lose to achieve
20 their goal.  [Victim 1] will come to an end and after years of
21 planning / waiting for the right opportunity you will all say 'damn
22 something actually did happen' and maybe you shouldn't have been so
23 sassy.  Might want to pass this on to [Victim 1] and Borngood.  I'm
24 sure you can reach them somehow because it won't be just them
25 affected anymore."
26         p.  On or about March 5, 2022, defendant BALTIERRA sent
27 Victim 1 a message on Twitter that read, "don't worry he won't have
28

4

1 [Victim 1] around forever," "time is counting down for you," and

2 "[Victim 1] is not going to be around forever :)"

3       q.   On or about March 7, 2022, defendant BALTIERRA sent

4 Victim 1 a message on Twitter that read, "Hired people to I'll come

5 and you get [sic] bitch."

6       r.   On March 13, 2022, defendant BALTIERRA sent Victim 1,

7 and others, an email that read, "Think about who's still out here and

8 freely roam around.  One day things are going to come crashing down

9 for [Victim 1] and everything that she loves.  Think that it will

10 just drop that easily?  Might want to check some mail soon as well.

11 [Victim 1] will be hunted down no matter how long it takes.  And

12 everytime that slut shows up online her naked pictures and info gets

13 spread even more and everyone she interacts with gets messed with

14 also."

15       s.   Between on or about March 7, 2022 and on or about

16 March 10, 2022, defendant BALTIERRA sent Victim 1's boyfriend and

17 boyfriend's parents photoshopped nude images of Victim 1, via text

18 message and email.

19 ///

20 ///

21 ///

22

23

24

25

26

27

28

1        t.   On or about March 15, 2022, defendant sent Victim 1 an

2   unsolicited package that contained a box of condoms.

3

4                              TRACY L. WILKISON
                               United States Attorney
5

6

7                              SCOTT M. GARRINGER
                               Assistant United States Attorney
8                              Chief, Criminal Division

9                              BENJAMIN R. BARRON
                               Assistant United States Attorney
10                             Chief, Santa Ana Branch Office

11                             GREGORY S. SCALLY
                               Assistant United States Attorney
12                             Deputy Chief, Santa Ana Branch
                                 Office
13
                               JAKE D. NARE
14                             Assistant United States Attorney
                               Santa Ana Branch Office
15

16

17

18

19

20

21

22

23

24

25

26

27

28